This is 523-1092 Woodbine Park Prairie Estates Homeowners Association v. Chastain & Associates LLC, et al. Just so you are aware, Justice Barberis is the third member of the panel today. He is attending a seminar out of state and I'm putting the blame on him. He forgot to tell Mattis Clark that he was going to be gone. So, he will obviously listen to the oral arguments of today and then we will discuss the case. So, it's normally not a problem. I just ask, you know, make sure you speak well so the recording is good. Mr. Franz, are you ready to proceed? Yes, Your Honor. Go right ahead. Good morning, Justices. Michael Franz on behalf of the Counsel. Good morning. This is a matter of a homeowners association against a professional engineering firm and other individuals. On July 28, 2023, the trial court, sua sponte, granted judgment in favor of defendants on one very specific narrow issue. And I'll take you directly to the quote provided by the court in a minute order. Specifically, the court finds as a matter of law that Chastain, in his capacity as an engineer, did not have a fiduciary relationship with plaintiff. That's at C-2285. It's noteworthy that defendants never moved for summary judgment on this issue, on this fiduciary relationship issue. Previously, defendants had moved for summary judgment, which was denied by the trial court. That denial was on July 10, 2023. And at that time, the trial court had found that there was a question of fact as to whether defendant Chastain had a special relationship with plaintiff that created a fiduciary duty and whether defendant had breached that duty. That's at C-1813. The trial court got it right the first time, and for whatever reason, sua sponte reversed itself. Now, the parties, it's worth noting, the plaintiff filed an agreed motion with defendants to get clarification on the court's ruling. And the court denied that motion. The court was unwilling to provide clarification as to its sua sponte granting of summary judgment. I want to point to the specific words of the court in that sua sponte order. In his capacity as an engineer. That's important because the trial court didn't address the true issue here, and that is defendant Chastain serving and breaching its duties as an expert witness to the plaintiff. The Plaintiff Homeowners Association was involved in litigation with the developer of the Homeowners Association. And the Plaintiff Homeowners Association retained Chastain to serve first to perform engineering study duties, and those duties were specifically outlined in a contract with the association. After that contract, and after those duties were performed, at least allegedly by defendant Chastain, there was a second agreement between plaintiff and Chastain, and that was for Chastain to serve as an expert witness in its litigation against its developer. The term expert witness and the contemplation of serving as an expert witness is never addressed in the written contract between the parties. It is something that came up later, and it is something that the record shows ample evidence for, that defendant Chastain agreed to serve as an expert witness on behalf of the plaintiff. Now, the court not only granted judgment on a breach of fiduciary claim on Chastain, falling from the court's belief that Chastain owed no fiduciary duty to the Plaintiff Homeowners Association, the court also granted judgment on a fraud claim against Chastain, a civil conspiracy claim against Chastain, a civil conspiracy claim against Cochran Engineering, a civil conspiracy claim against Greg Foltz, who was a manager, one of the principal partners of Chastain, and then a negligence claim against Chastain. So even if the court got it right, and we dispute this, that a fiduciary duty was not owed by Chastain to plaintiff, the court entirely got it wrong on finding that there were no other duties owed by Chastain to the plaintiff. Now, for the other claims, the court just sui sponte, granted judgment on six of the eight claims brought by plaintiff, and really the only basis the court gave was on one claim, that no fiduciary duty was owed. Well, the court found there was no special relationship. So can you discuss a little bit when that term is used? It's a very specific term. It is a specific term, Justice, and it's addressed by this court in Yorkel v. Height, which is one of the two cases that the trial court actually cited in its justification for granting judgment to the defendants on six of those claims. And what are the elements of a special relationship under Yorkel? Well, the most important element, and it's what we have here, is there must be a, to have a special relationship, there must be a disparity in business experience between the parties, and that's exactly what we have here. We have a homeowners association just comprised of individuals. They have no knowledge of professional engineering and what a professional engineer should do in developing a homeowners association, laying out roads, plotting properties, all those things. A homeowners association, these individuals have no knowledge whatsoever of that. There's a special relationship there, that Chastain has that knowledge. And even though the court cited Yorkel v. Height, it actually goes against the court's finding. Yorkel v. Height supports that there's a special relationship between Chastain and Platt. What other elements besides the disparity are there in a special relationship? Well, the knowledge and experience of the defendant, Chastain, compared to that, of the Platts. That's the only element? I would say it's the most important element, and it's the element that the court missed. The court also referred to Flenshack v. Village of Frankfort, a Supreme Court case. Which, by the way, it miscited. This citation is wrong. Yes, you're wrong. That's correct. That case didn't even address expert witness services. And the trial court really missed the biggest issue here. It wasn't about this very minor contract entered into between the association and Chastain, which was for a few thousand dollars. It was about at the same time this contract was entered into, Chastain was negotiating to purchase Cochran Engineering, the very company that it was agreeing to look at on what they did at the Homeowners Association. Cochran Engineering was hired by the developer to lay out and do the professional engineering on this Homeowners Association. But the Homeowners Association did not hire Chastain to review the work of Cochran. They hired him for a different reason. And I want to quote that. I thought I was looking through my notes. To prepare a report summarizing IDOT policies for stream crossings and local road construction. There was nothing specific about what Cochran did or didn't do, correct? I very much agree with that as the underlying contract, as the first contract. At that moment, and I believe it was in January of 2009, at that moment, frankly, the association probably had no idea that Cochran was even involved in laying out the Homeowners Association. And why would they? Again, going back to the special relationship. These are lay people. They have no idea what it took at that point. But at some point, they were involved in a litigation with their developer. And there's plenty of evidence in the record that thereafter, at some point, the association and Chastain came to an agreement where Chastain was going to serve as an expert witness. That was not put in writing, correct? Correct. Correct, Justice. So there's no contract for him to serve as an expert witness? That's correct. But there's plenty of evidence. And the first evidence I'll point you to is in the record. It's the deposition of Kevin Myers, another principal of Chastain, not named as a defendant, but Mr. Myers admitted that Chastain was retained as an expert witness in the association's case against the developer. That's in the record, C-1514. Also in the record, Chastain, in this litigation, the developer litigation, as I call it in the briefs, in the developer litigation, a subpoena was served on Chastain. And counsel for Chastain at the time filed a motion to quash the subpoena. And in that motion to quash, I'm quoting, HLC, which means Holel Chastain, that's another reference to the company, is a controlled expert retained by Woodbye, referring to the association, in this case. What did you just read from? That's in the record. It's specifically at C-1598. What are you reading from? It is a motion to quash filed by Chastain's attorneys in the underlying developer litigation between the association and its developer. So attorneys came in and in the most filed motion to quash stated, Chastain is the association's expert witness in this case. Not the case we're here on, in the developer litigation case. That's two instances showing that there was agreement to serve as an expert witness. Did anybody from Chastain, any of the defendants admit that they were hired? Because my notes indicate that in the answer to the third amended complaint, Chastain said it was not retained as an expert witness. Chastain has denied in the pleadings that it was retained as an expert witness on the association's behalf. That's against Coughran. In the developer litigation between the association and its developer. Now, I'll admit, there's a lot of moving parts of lawsuits that have happened in regards to this property. And defendants spent what I would consider an inordinate amount of time going through that litigation and their statement of facts. Most of that were red herrings, frankly, that really didn't address the issue here. And it's that Chastain agreed to serve as an expert witness. And Justice Hewitt asked, had anybody from Chastain admitted? Yes, they have. And that was the first fact I pointed out. Kevin Myers, in deposition testimony, admitted that the company had been retained as an expert witness. C-1514. A third instance where there is proof that Chastain was serving as the association's expert witness. And that was the deposition of Timothy Tighe. T-I-G-H-E. He was the former attorney for the association in this lawsuit. One of the attorneys for the association from the same law firm as its lead attorney, Mr. Ellis. And Mr. Tighe admitted what? Mr. Tighe stated in his deposition that Chastain was the association's expert in the developer litigation. Do you have a cite in the record for that? Yes, C-683, C-685, and C-701. And even more importantly, Mr. Tighe testified that Chastain had been asked to review Cochran's work. That's at C-684. Why does the hiring of an expert witness create a fiduciary relationship? I mean, if we allowed the hiring of experts to create a fiduciary relationship every time there was a hiring, we would be seeing a lot of litigation on that. Agreed. And I concede that there's a body of case law in Illinois that the professional engineering firm would not owe a fiduciary relationship. But those cases don't say that a professional engineering firm hired as an expert witness in litigation does not owe a duty in negligence to. I agree with you that there may be a negligence issue, but I don't understand the fiduciary relationship. I would concede, Justice, the law on fiduciary duty. On the mere hiring of an expert doesn't create a fiduciary duty. I agree. I agree. And going back to the six of the eight claims that were granted summary judgment, fiduciary duty is only one of the claims. Were the conspiracy claims all based on the fiduciary relationship? Well, the conspiracy claims were based on the alleged facts, but facts and evidence that the defendant, Chastain, and an individual, Phil Cochran, who owned Cochran Engineering, were negotiating for the sale of Cochran Engineering to Chastain. And that at the very same time, Chastain had been asked to review Cochran's work. They knew that. And in fact, they knew that they were trying to buy Cochran. And I'll draw your honor to the testimony of Greg Foltz. Mr. Foltz, essentially the managing partner of Chastain at the time, admits, and he has an e-mail, it's also cited in the record, that they agreed to a relationship with the association in part to essentially cover up and help Cochran Engineering. I saw that e-mail. My question to you is, in order to have a conspiracy, there must be an underlying tort. Well, it's just generally. That's a rule I'm familiar with. Maybe it's different under these circumstances.  Fraud is your underlying tort. Fraud would be the underlying tort. What would the statement be or the representation be that you allege that is the fraud? The omission of its relationship and the concealment. The concealment. The concealment of its relationship. At the time of the hiring, at the second time. And when the parties agreed to this expert services relationship. Well, was it at the time the parties agreed to the expert services, or was it at the time of the original hiring that there was an omission? It's actually both. Both. Because even under taking this back to the first contract between the association and Chastain, at that time, and this, again, we haven't even talked about the Illinois Professional Engineering Act, which actually sets forth a negligence duty owed by a professional engineering firm to its client. Again, I'm separating that. That's not fiduciary duty. That's a negligence duty. But the trial court mistakenly just broadly ruled that no duties could be owed under any type of claim. Had the complaint survived a motion to dismiss prior to the court's ruling? Yes, Your Honor. On? The third amended complaint. The third amended. The second. Not the third amended complaint. Had not. Not the third amended complaint. The second amended complaint had survived a motion for summary judgment, and that ruling, in fact, both parties had filed motions for summary judgment, and the court had denied both rulings, or both motions. And, again, at that time, the court provided this in its order, that there was a special relationship. There's a question of fact as to whether there was a special relationship. The court got it right at that time. Well, I know you're out of time, but I have one more question. Go right ahead. The negligence action that we haven't talked much about, the court found that it was for purely economic loss, and, therefore, under the Mormon doctrine, it could not lie. There were no other damages other than monetary damages. What do you have to say about that? Well, I think the court was mistaken. One, there's a specific exception that the Mormon case points out where plaintiff's damages are caused by an intentional false representation. Mormon addresses that. Also, quoting from Mormon, tort law is best suited for personal injury and property damage. That's a quote directly from the case. What's the property damage? You have no personal injury here. What's the property damage? Well, the damage is to what happened after the fact, when the association lost its lawsuit against the developer. The association dissolved. Property values plummeted. There was no... That seems a little distant. Well, but we never got the chance to get there, did we, Justice? We didn't have the opportunity to prove those damages, which would have been for the trier fact to determine. I'll bring up the homeowner's association. Let's just say the embroiderment that went on at that time was caused by the developer, or could be said to be caused by the developer and his family, who came in, bought some parcels, and essentially took over the homeowner's association, correct? Yes, it's an excellent point, but that would be up to the trier of fact to assess, and who was responsible for those damages. Which the association was never allowed to do in this case. And to be fair, I think you hit the nail on the head a minute ago. You said there's been a lot of litigation involving this, and I'm trying to keep it straight, but I thought, is that the case that once the developer, the doctor, I can't remember his name, I'm sorry. Dr. Fletcher. Dr. Fletcher and his sister, once they essentially took over the homeowner's association, is the developer lawsuit litigation, is that the litigation that they dismissed themselves? Or am I thinking of a different case? No. No, in fact, the sister, and her name is Sally Fletcher, she was just brought into that litigation. She wasn't a developer. She had nothing to do with the development. She bought lots from her brother, the developer. She was granted judgment in that case, and was out of that case before it was concluded. Okay. So, but as I said before, I called it a red herring, but to me it's more of a rag hole. You go down all the other litigation that happened in this case, and all it does is obscure the fact of what really happened here, and frankly the fraud committed against the association by Chastain and two individuals. The homeowners association no longer exists. That is not correct. The homeowners association was, for lack of a better term, insolvent for over a decade. It has been reconstituted. It is in good standing with the state of Illinois, and it is now operating. Let's assume hypothetically that this court sets aside the order of the trial court, and we allow you to rewind. What would be the impact of that? Where would it begin? Well, Justice, we were weeks away from a scheduled trial, and discovery was concluded, and all witnesses had been disclosed. Exhibits had been disclosed. This case was ready to go to a jury. And if you send this back, as I would urge you to do, this case would be ready to be tried. Okay. Any other questions? Not right now. Okay. Actually, you'll have time for a vote. Good morning, Your Honors. Good morning. May it please the Court, my name is Catherine Weiler. I represent the defendants, Appolice Chastain, Greg Fultz, and Philip Cochran. We're asking that the Court affirm the trial court's ruling as properly made. There have been a lot of questions that the Court has been asking. I want to try and hit on many of them because I think they're actually, obviously, because the Court is asking them, fundamental to the Court's analysis here. And the first one comes related to this theory of a contract. What exactly did Chastain contract to do? And, Your Honor, you pointed it out. There is a written contract, and it gives exactly that information to the Court. It's at page 114. Chastain's contract with the HOA is to, quote, prepare a report summarizing IDOT policies for stream crossings and local road construction, unquote. That's it. Now, Plaintiff's Counsel has argued here and repeatedly, vociferously, that there was a separate, amorphous, theoretical contract for additional expert services under which Chastain was purportedly going to create some sort of an expert report or testify, it's not clear, as to Cochran, as to Cochran engineering, as to issues related to Cochran. And that's what's missing from the testimony and evidence that Plaintiff's Counsel cited to the Court today. There are a handful of witnesses who, over the course of discovery in separate litigation involving these particular parties, as Your Honor pointed out, there is some testimony that refers to Chastain acting as a, quote, expert. Now, Chastain has made clear in its answer that it was not acting as an expert witness in this case. It was hired to prepare a report, and it did so. But what is absolutely not in any of that testimony is any suggestion that Chastain was hired to act as an expert related to Cochran engineering. Nowhere. It's nowhere. And they never agreed to do so. That's also important. The testimony, the deposition testimony that was cited to us doesn't exist. The testimony exists. I'm certainly not suggesting that it does not exist. What it does not say is anything about Cochran engineering. The testimony is amorphous, and it says, yes, the HOA hired Chastain. Chastain is an engineering company. They were hired to prepare a report. What that testimony, nowhere does it say. We hired Chastain separately from what we included in their contract to testify against Cochran engineering or prepare a report that was negative or analyzed Cochran engineering's work. That's what's not there. Well, I'm more interested in the report part. Agreed, Your Honor. And there's nothing anywhere under which— It says that they were hired to prepare a report. A report analyzing Cochran engineering. I want to be very precise about that because there is certainly, no one disputes, that Chastain was hired to prepare a report. That's absolutely accurate, and the contract is a written contract in the record. But there is nothing in the record that says that Chastain was hired to prepare a written report about Cochran engineering. And that's why it's so important to have a written contract. That's the point. It seems odd to me that there's this email between the two that intimates that they're going to cover up some— I don't know the right word, but mistakes. Let's use the word mistakes. Well, there are a handful of issues with that email as to the legal claims that are made in this case. First and foremost is the timing, because as we know from all of the testimony, and it is undisputed, there was one meeting between Mr. Foltz and Mr. Cochran at some point in 2008. They had lunch. They talked about maybe an acquisition. It didn't go anywhere. There was another meeting later, a year later, a year and a half later, January 15th of 2009. Same thing. A lunch, maybe we'll acquire the business. This email was sent, and then nothing. For years, over the entire course of Chastain's relationship with the HOA, no discussions. There's nothing in the record that suggests otherwise. Nothing about any sort of an acquisition, and there wasn't an acquisition until 2013. So I understand what the Court is referring to, but the record certainly shows that those discussions did not go anywhere. But even more important than that, I think it's worth going back to— and this is setting aside what the actual legal issues in this case are, because it's not even really pertinent to those. But there's one other point that I wanted to address that was discussed a little bit during the opening argument, and that has to do with who the parties were at the time. We were discussing this just a little bit ago. Who was the HOA? Who was in charge of the HOA? What was the HOA trying to accomplish? And how did the HOA go away? How did this HOA litigation go away? And that's why all of the information that is included in Chastain's statement of facts is so important here. Justice Cates, you're probably terribly familiar with this, because I realize you authored the decision that walked through how that whole relationship progressed. And what happened is, after the HOA hired Chastain to prepare this report, nothing about Cochran. There was going to be a lawsuit against Dr. Fletcher. And there was analysis about whether or not the development was properly created that was brought by the HOA. After the HOA began moving forward with that lawsuit, Dr. Fletcher's family took over the HOA and decided to end the lawsuit. And it's not because of anything that Chastain did. It had nothing to do with Chastain. There is a description of the Homeowners Association meeting when the family took over the HOA. This is at pages 12, 18, and 19 of the record. And the then-president of the Homeowners Association explains that there was a takeover. There was a vote. There was a decision to, quote, cancel the lawsuit. That was the decision. And it was made by the Homeowners Association. Not because of anything about Chastain. Not because of anything about Cochran. It was because the family decided that they didn't want to proceed on a case that involved Dr. Fletcher. In April of 20—so that's in May of 2010. In April of 2010, counsel for the HOA withdraws. There is no attorney involved for the HOA anymore. And then there is an unopposed motion for summary judgment filed by Dr. Fletcher. That's why the underlying litigation goes away. It has absolutely nothing to do with Chastain or Chastain's report or any sort of relationship between Chastain and Cochran. And that's where we come back to the legal claims in this case. What are the claims in this case? They are claims for which there can be no damages. Because ultimately what the plaintiff is arguing here is that HOA was damaged because Chastain did something that kept the HOA from moving forward with that litigation. But there are no facts at all of record that support that argument. And it's not something that a jury needs to decide because it's undisputed. It's undisputed why the litigation ended. Beyond that, beyond that, we have— So even if there were a negligence claim, there's no damages. Exactly. And that's exactly what I was going to say next, Your Honor, is beyond that fundamental problem that there are no damages, there is no other legal basis for a negligence claim. That's where we have this fundamental disconnect here between the facts and the legal allegations in this case. Now, I may be incorrect. I am certainly not trying to put words into my opposing counsel's mouth. I thought I understood them to essentially concede to this Court this morning that there was no fiduciary duty between these two parties. And if that's true, then that claim goes away. So there's no breach of fiduciary duty. I'm sorry, there's no breach of any fiduciary duty here. What are the remaining claims? There was a breach of contract claim. That was voluntarily dismissed and is not at issue on appeal. And it's important to remember that there was a breach of contract claim because that leads this Court to the trial court's Mormon analysis. This is not a situation where we're just talking about a straight negligence claim. This is a claim premised on a contract, on a written contract that we have all reviewed that is in the record at page C-114. The negligence claim arises out of a duty that is purportedly created by that contract. And because the duty is created by the contract, we know the scope of the duty. It's identified in the contract. Prepare a report summarizing IDOT policies for stream crossings and local road construction. And no one has said that Chastain did not satisfy that duty. So right there, the negligence claim failed as a matter of law. What the trial court said is, beyond that, I'm going to determine that the negligence claim fails under Mormon because what you are trying to do is bring a negligence claim that is really a breach of contract claim. And that's where Mormon comes into this analysis. It doesn't apply in any negligence case. It only applies in cases where there is also a contract. And the question created by the economic loss doctrine is, if there is a contract, does the plaintiff also have the ability to move forward in negligence for damages? And the answer normally is no for the exact same reasons. It's no here. The only damages the plaintiff seeks are economic damages. As the court pointed out, there is no property damage. There's no personal injury. You can't move forward in a negligence claim in this posture. You can move forward on a breach of contract claim for an alleged breach of contract. And the plaintiff did that, but they have abandoned it now. They voluntarily dismissed it, and it's no longer an issue. The remaining claims in litigation are for fraud and for civil conspiracy. And, Justice Gates, you already addressed the problems with the civil conspiracy claims. But then we have this fraud count. And what's the allegation in fraud? The allegation in the fraud count is entirely premised on the necessary existence of a fiduciary duty. That's the only way that fraud claim can move forward. And as we've already discussed, it sounds like the plaintiff has conceded there is no fiduciary duty. Today. At that point, all of those claims properly went away. And that's why the trial court's ruling granting summary judgment should absolutely be affirmed. We ask that the court do so. If there are other questions, I'm happy to answer them. Let me look through those real quick. I don't think I have any questions. You've covered mine. Very good. Thank you, Your Honors. Thank you. Counsel began her argument using the words amorphous and theoretical in addressing the issue of whether Chastain agreed to serve as an expert witness. I've already pointed out to Your Honors facts in the record, and specifically Mr. Tye's testimony at C-684, that plaintiff hired Chastain to review Cochran Engineering's work. That testimony is not amorphous. It's not theoretical. This was a separate agreement. We had a contract for a very specific defined scope of services. It had nothing to do with expert services in a lawsuit. Later on, the parties agreed that Chastain would serve as expert witnesses in this lawsuit, in the developer litigation lawsuit. That's not amorphous. That's not theoretical. I quoted at least six instances where it's in the evidence that Chastain agreed to serve as an expert witness. Counsel also referred to the – she made, frankly, light of the fact that Chastain was negotiating with Cochran to purchase his company and admitted, and I guess I probably would too, that Mr. Foltz testifies, yeah, mistakes were made. Those were his words. Mistakes were made, and part of the reason we were agreeing to represent the association was to essentially cover those up. And I would urge Your Honors to take a look at Mr. Foltz's testimony as cited in the briefs. Finally, counsel spent a large amount of time discussing damages. But really, that gets directly to the point. Whether or not the association was damaged, there's evidence in the record that they were. But is it question of fact for the trier? The question is what kind of damages. If it's monetary damages only under the breach of contract theory, then the Mormon doctrine is going to kick in. It's not. One of them is the loss in value of the property. That's not covered by the Mormon doctrine. And that's a question, one, was there a loss in value of the property? Two, what was the cause of it resulting from this developer litigation that failed on behalf of the association? And was the failure the result of, frankly, Chastain tanking their expert report and never addressing the elephant in the room, which was Cochran did all the work that was addressed in the expert report. And it's worth noting, they write a report and they never mention Cochran Engineering once in the entirety of this report. I just want to clarify, when you talk about this, quote, expert report, is that the original report to, to quote it again, something about the I-dot and bridges and roads, is that what you're referencing? Well. Because there's, or is there an expert opinion report somewhere in this record? The report I'm referring to is within the record. It comes after the conclusion of that original contract for services, which had a specific time period in it. The expert report comes something like 10 months later. I believe the contract expired in February of 2009, and the contract comes that October. So maybe not quite 10 months. But the contract was used in the litigation, in the developer litigation. And again, it omits, it entirely omits the words Cochran Engineering. And I'll point, Your Honors, to Plaintiff's expert in this case, who was deposed. He testified that the failure to disclose the prior relationship with the developer, which we haven't even talked about, Chastain actually did work for the developer on this property, and never told the association that they had worked for the developer, even though the association was involved in litigation with the developer. Never disclosed that. When you amended your complaint from the second amended to the third amended, you added the negligence count. That was the only count that changed, as I understand it. Am I right? That's correct. Okay. And what you say in this complaint is that they failed to properly prepare the report. They undertook a duty to prepare the report. And I'm assuming you're talking about a report related to Cochran. Is that right? That should have addressed Cochran, but did not. Okay. And I guess the problem we're having is the only evidence, if you will, that there was a duty to prepare this report, is based upon this testimony that you've cited from 683 to 685, and perhaps Mr. Foltz. Is that his name? Foltz? I'm sorry. Mr. Tye, Your Honor. Mr. Tye gives 683 to 685, 701.  So the only evidence of the duty to create this report under your negligence theory, which doesn't even allege a breach of contract, actually, just negligent failure to prepare the report, it says, as a result, judgment was entered against the association in the lawsuit against its developer. That's your claim for damages. Is that right? That is in essence, Your Honor. I'm reading from your pleading. Yes. Yes. And that Chastain was negligent in performing its services, its duties, as an expert, retained expert witness in that litigation. Where is there any evidence that there was a duty to prepare a report? Well, I can't give you a specific quotation, but there is evidence in the record that Chastain was requested to prepare a report in the case. And obviously, they did. The allegation of negligence and fraud is that they either intentionally, fraudulently did not address Cochran Engineering's mistakes in that report, or they negligently failed to do so. But that's not alleged in your account. Well, it's part of the alternative. There's a fraud claim, and then there's a negligence claim. I see. So it's part of the alternative. Okay. Thank you very much. I have nothing further. Okay. Well, thank you, counsel. Thank you. I appreciate both counsel's arguments today. That's a difficult case. So we will take that matter under advisement. We will issue an order in due course.